# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-0421V
NOT TO BE PUBLISHED

| | |
|---|---|
| KENNETH GUMM, SR., <br><br>       Petitioner, <br>v. <br><br>SECRETARY OF HEALTH <br>AND HUMAN SERVICES, <br><br>       Respondent. | Chief Special Master Corcoran <br><br>Filed: January 21, 2020 <br><br>Attorney's Fees and Costs; Reasonable Basis; Special Processing Unit ("SPU") |

*Steven Edwards Winslow*, Jubelirer Pass & Intrieri, P.C., Pittsburgh, PA, for Petitioner.

*Linda Sara Renzi*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION DENYING ATTORNEY'S FEES AND COSTS[1]

On March 20, 2019, Kenneth Gumm, Sr. filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa–10, *et seq.*[2] (the "Vaccine Act" or "Program"), alleging that he suffered from Guillain Barré syndrome ("GBS") as a result of an influenza ("flu") vaccine administered "on or about Fall 2015." Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

Within six months of filing, on August 1, 2019, Petitioner voluntarily dismissed his claim pursuant to Vaccine Rule 21(a).  (ECF No. 9). The prior Chief Special Master presiding over the matter subsequently issued an order concluding proceedings and dismissing the Petition on August 2, 2019.  (ECF No. 10).

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the decision will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

On August 20, 2019, Petitioner filed a motion requesting $4,497.50 in attorney's fees and $528.50 in costs, for a total amount of $5,026.00. Motion for Payment of Petitioner's Attorney's Fees and Reimbursement of Case Costs ("Pet. Motion") at 4. (ECF No. 11). Petitioner filed additional documentation in support of his motion on September 6, 2019. (ECF No. 13). Arguing that there was no reasonable basis to file or pursue this claim, Respondent opposed Petitioner's request. Respondent's Opposition to Petitioner's Application for Attorney Fees and Costs ("Opp."), filed September 17, 2019 at 1. (ECF No. 14). Petitioner filed a reply on September 24, 2019. Reply in Support of Motion for Payment ("Pet. Reply") (ECF No. 15). This issue is now ripe for adjudication.

For the reasons discussed below, I **DENY** Petitioner's motion for fees and costs.

### I.     Procedural History

As the filed billing records reveal, Petitioner's initial consultation with his counsel took place on March 18, 2019 – a few days before the Petition was filed on March 20th. Pet. Mot. at 1; ECF No. 1. In it, Petitioner asserts that he received a flu vaccination "on or about Fall 2015" and "[a]pproximately two [2] weeks after . . . his health quickly declined and he began to experience symptoms including, but not limited to, muscle weakness, dizziness, loss of balance, tingling, numbness, and paresthesia in his extremities." Petition ("Pet.") at ¶¶ 2, 4. Because the claim was filed more than three years from onset, it was literally untimely under the Act's three-year limitations period – but could be saved by the Act's "lookback" provision, since it asserted a flu-GBS Table claim, and did so in accordance with the lookback's requirements.[3]

While Petitioner filed an affidavit in support of these allegations, the Petition was not accompanied by medical records or a record of vaccine administration. Petitioner stated that "[u]nder the circumstances, the undersigned counsel did not have sufficient time to obtain Petitioner's medical records and other supporting documentation prior to filing this Petition." Pet. at ¶ 16. On March 22, 2019, Petitioner was ordered to file supportive medical records and a statement of completion by April 1, 2019. (ECF No. 5). However, on March 27, 2019, Petitioner filed a motion for an extension of time in which to file these documents. (ECF No. 6). In his motion, Petitioner claimed that both he and his counsel were "exercising every reasonable effort to obtain the medical records and supporting documentation as soon as possible." *Id.* at ¶ 5. Pursuant to Petitioner's

---

[3] Under the Vaccine Act, a person who has sustained a vaccine-related injury must file a claim within 36 months of the onset of the symptoms of the injury. Section 16(a)(2). This would mean that Mr. Gumm's claim ordinarily should have been filed by no later than sometime in the fall of 2018 – not March 2019.

However, pursuant to Section 16(b), "[i]f at any time the Vaccine Injury Table is revised and the effect of such revision is to permit an individual who was not, before such revision, eligible to seek compensation under the Program, or to significantly increase the likelihood of obtaining compensation, such person may . . . file a petition for such compensation not later than 2 years after the effective date of the revision."  GBS was added to the Table on March 21, 2017, and the lookback allows otherwise-untimely Table claims to be filed if (a) the claim is asserted within two years of the Table's amendment, and (b) the vaccine-related injury is alleged to have occurred not more than eight years before the amendment. *Id*. Both requirements were satisfied here (although I do not find that the claim stated a cognizable Table claim).

request, Petitioner's deadline was extended to June 1, 2019. *See* Order, issued March 28, 2019.

Petitioner's counsel's attempts to obtain medical records from Dr. Alastair C. Kennedy, Petitioner's rheumatologist, are documented in the billing records.[4] *See* Pet. Motion, Exhibit 1 at 4-5 (entries dated April 9, April 17, April 24, May 1, May 3 and May 6, 2019). However, records from this practitioner were not ever filed and there is no indication that they were ever received.

Petitioner's counsel later received records from Dr. Richard T. Penly,[5] Petitioner's primary care physician, on April 11 and April 16, 2019. *See* Pet. Motion, Exhibit 1 at 2, 4. However, Petitioner has acknowledged that these records did not reference a GBS diagnosis; rather, "Petitioner's medical records indicated that he developed Polymyalgia Rheumatica ("PMR") shortly after the influenza vaccine was administered." Pet. Mo. at ¶ 5.

On May 30 and May 31, 2019, Petitioner's counsel followed up with Petitioner regarding the existence of other physicians who may have diagnosed him with GBS. Pet. Motion, Exhibit 1 at 2-3. On May 31, 2019, Petitioner also filed a second motion for an extension of time in which to file his outstanding medical records and statement of completion. (ECF No. 8). This request was granted, and Petitioner's deadline was extended to August 1, 2019. *See* Order, issued June 4, 2019.

On June 10, June 18, June 21, and June 28, 2019, Petitioner's counsel again followed up with Petitioner to obtain records documenting Petitioner's alleged GBS diagnosis. Pet. Motion, Exhibit 1 at 3. However, "Petitioner and his family were unable to identify any additional physicians for [counsel] to request medical records from." Pet. Motion at ¶ 8. There is no record indicating that Petitioner or his counsel ever attempted to obtain a record of the vaccination alleged to be causal.

After emails to and conference calls with Petitioner and his family on July 30, July 31, and August 1, 2019, Petitioner filed a notice of voluntary dismissal and the prior Chief Special Master issued an order concluding proceedings and dismissing the Petition. Pet. Motion, Exhibit 1 at 3; (ECF Nos. 9-10).

Petitioner filed his motion for attorney's fees and costs on August 20, 2019. (ECF No. 11). Respondent filed a response, and Petitioner filed a reply. (ECF Nos. 14-15). Respondent disputes Petitioner's assertion that reasonable basis existed for his claim.

## II. The Parties' Arguments

In his motion, Petitioner first argues that he "had a reasonable basis for pursuing his claim initially based upon his belief that he was diagnosed with GBS shortly after receiving an influenza vaccine." Pet. Motion at ¶ 10. Petitioner then argues that he "had

---

[4] Although the billing records only refer to "Dr. Kennedy," based on the allegations in the Petition, this appears to be a reference to Dr. Alastair C. Kennedy. *See* Pet. at ¶ 6.

[5] Although the billing records only indicate that records were received from "Dr. Penley," based on the allegations in the Petition, this appears to be a reference to Richard T. Penly, M.D., Petitioner's primary care physician. *See* Pet. at ¶ 5.

a reasonable basis to file a [p]etition before receiving Petitioner's medical records in order to preserve the timeliness of such a claim," and that "[w]hen it was determined there was no longer a basis to proceed in light of the medical records and applicable statute of limitations, Petitioner voluntarily dismissed his Petition for compensation on August 1, 2019." Pet. Motion at ¶¶ 11-12.

Respondent asserts in reaction that Petitioner never had a reasonable basis for the claim, and that Petitioner's counsel "filed the [P]etition without knowing [P]etitioner's actual condition." Opp. at 4-5.[6]

In his reply to Respondent's Opposition, Petitioner argues that denying attorney's fees and costs in this matter and in similar instances "would discourage attorneys from representing vaccine injured clients unless they are approached months in advance of the expiration of the statute of limitations." Pet. Reply at 5.

### III.   Analysis

#### a.  *Reasonable Basis Standard*

Under the Vaccine Act, an unsuccessful petitioner may be awarded attorney's fees and costs if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." § 15(e)(1). While petitioners are entitled to a presumption of good faith, this presumption does not extend to reasonable basis which must be affirmatively demonstrated by the petitioner.

---

[6] Respondent also argues that Petitioner has failed to establish that the Petition was timely filed. Opp. at 5. In a footnote, Respondent explains that "even if [Petitioner] had been diagnosed with GBS, it is unclear whether the lookback provision for Table revisions would apply because [P]etitioner was eligible to seek compensation prior to the March 21, 2017, [sic] Table change and that change would not have significantly increased his likelihood of receiving compensation." *Id.* at note 4. It is evident from the allegations in this case that a Table claim would not be viable, and I have recently ruled that non-Table flu-GBS claims may not obtain the benefit of the lookback (and hence be excused from the three-year limitations requirement). *Randolph v. Sec'y of Health & Human Servs.*, No. 18-1231V, *slip. op.* (Fed. Cl. Spec. Mstr. Jan. 2, 2020). Of course, such issues were not reached in this case when Petitioner withdrew the claim voluntarily under Vaccine Rule 21.

Regardless, it also appears that counsel may request fees even *if* the claim were dismissed for untimeliness. In *Sebelius v. Cloer*, 133 S.Ct. 1886 (2013), the Court noted that, "[i]f Congress had intended to limit fee awards to timely petitions, it could easily have done so. But [the Vaccine Act] instead authorizes courts to award attorney's fees for those unsuccessful petitions 'brought in good faith and [for which] there was a reasonable basis.' " (quoting 42 U.S.C. §300aa–15(e)(1)). *See also Bilodeau v. Sec'y of Health & Human Servs.*, No. 14-072, 2017 WL 2417926, at *4 (Fed. Cl. Spec. Mstr. May 9, 2017) (stating "[n]either the fact that no medical records or supportive expert report was filed nor the fact that the claim was filed beyond the statute of limitations automatically negates a finding of reasonable basis.").

I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g., Allicock v. Sec'y of Health & Human Servs.,* No. 15-485V, 2016 WL 3571906, at *4–5 (Fed. Cl. Spec. Mstr. May 26, 2016), aff'd on other grounds, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.,* No. 14-1072V, 2015 WL 10435023, at *5–6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner must demonstrate the claim's reasonable basis through some objective evidentiary showing. *See Chuisano v. Sec'y of Health & Human Servs.,* 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.,* 101 Fed. Cl. 303, 303 (2011)). The standard for reasonable basis is lesser (and inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases with reasonable basis (because they have objective proof supporting the claim) can nevertheless still fail to establish causation-in-fact. *Braun v. Sec'y of Health & Human Servs.,* Fed. Cl. 72, 77 (Fed. Cl. 2019).

The Court of Federal Claims recently provided further illumination as to the standards to be used in evaluating whether the totality of the circumstances warrants a finding of reasonable basis. *Cottingham v. Sec'y of Health & Human Servs.,* 134 Fed. Cl. 567, 578 (2017), *appeal docketed*, No. 19-1596 (Fed. Cir. Feb. 26, 2019). A special master should consider "the novelty of the vaccine, scientific understanding of the vaccine and its potential consequences, the availability of experts and medical literature, and the time frame counsel has to investigate and prepare the claim." *Id.* at 574. The existence of an impending statute of limitations deadline, however, has been removed from consideration under the "totality of the circumstances" analysis, as it does not constitute an objective factor relevant to the claim's underlying validity. *Simmons v. Sec'y of Health & Human Servs.,* 875 F.3d 632, 636 (Fed. Cir. 2017); *see also Amankwaa v. Sec'y of Health & Human Servs.,* 138 Fed. Cl. 282, 289–90 (2018) ("special masters must not consider subjective factors in determining whether a claim has reasonable basis[,]" and should "limit [their] review to the claim alleged in the petition. . . based on the materials submitted") (quoting *Santacroce v. Sec'y of Health & Human Servs.,* No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Spec. Mstr. Jan. 5, 2018)).

### b. *Petitioner's Claim Lacked Reasonable Basis from the Date of Filing*

There is no dispute that this claim did not have sufficient evidentiary basis to proceed after August 1, 2019 – that very proposition was the grounds for Petitioner's voluntary dismissal. Indeed, at the time this case was dismissed, the only evidence that had been filed was Petitioner's affidavit. Therefore, the issue posed by the present fee motion is whether there was enough objective evidence *before* August 1, 2019 to find that Petitioner's claim had reasonable basis.

Petitioner asserts that he "had a reasonable basis for pursuing his claim initially based upon his belief that he was diagnosed with GBS shortly after receiving an influenza vaccine." Pet. Motion at ¶ 10. However, there is no objective evidence in the record establishing that Petitioner was ever diagnosed with GBS, or that this condition was even considered by his treating physicians. The only evidence corroborating Petitioner's belief that he suffered from GBS was his own affidavit. (ECF No. 1). It is established in the

Program, however, that a petitioner's own statements are not "objective" for purposes of evaluating reasonable basis. *See, e.g., Chusiano*, 116 Fed. Cl. At 291 (petitioner's affidavit detailing "subjective belief" of vaccine injury did not constitute objective evidence); *Foster v. Sec'y of Health & Human Servs.*, No. 16-1714V, 2018 WL 774090, at *3 (Fed. Cl. Spec. Mstr. Jan. 2, 2018) (reasonable basis existed where counsel relied *not* on statements made by the petitioner but on "actual objective record proof") (emphasis added). Here, in the absence of any medical records supporting the claim in the Petition, Petitioner's belief is not sufficient to satisfy this part of the reasonable basis test.

Petitioner also argues that he was compelled to file the Petition before receiving medical records to preserve the timeliness of the claim (presumably measuring from the two-year period set by the lookback to file a flu-GBS claim after the March 2017 Table amendment). However, as the Federal Circuit explained in *Simmons*, "a looming statute of limitations deadline. . . has no bearing on whether there is a reasonable factual basis 'for the claim' raised in the petition." 875 F.3d at 636. Because Petitioner lacked sufficient evidence to support his claim at the time of filing, invoking the statue of limitations is not a valid argument.

The totality of the circumstances establish that Petitioner's claim lacked reasonable basis from its inception. Petitioner failed to provide any objective evidence to establish the feasibility of his claim, and the invocation of a looming statute of limitations deadline does not comport with the Program's established case law.

### IV.   Conclusion

For the reasons stated above, I conclude that Petitioner has failed to establish that there was a reasonable basis for the claim for which the Petition was brought. Accordingly, I find that an award of attorney's fees and costs to Petitioner is unreasonable, and his motion is **DENIED**.

The clerk of the court is directed to enter judgment in accordance with this decision.[7]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.